UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CMEDIA SERVICES, LLC doing business as Cmedia, | ) ) ) | |
| Plaintiff, | ) ) | No. 1:15-cv-00435-SEB-MJD |
| vs. | ) ) | |
| SHERMAN T ROGERS, AQUILA, LLC, FINELIGHT PUBLIC RELATIONS, INC., LANDCO OF SOUTHERN INDIANA, LLC, WALNUT STREET DEVELOPMENT LLC, HEARTLAND REALTY OF BLOOMINGTON, LLC, HEARTLAND DEVELOPMENT GROUP, LLC, CROSSROADS DEVELOPMENT GROUP, INC., YFD, LLC, FL WEST, LLC, BLOOM INSURANCE AGENCY LLC, FINELIGHT AGENCY, LLC, BLOOM MEDIA SERVICES LLC, JULIE A. ROGERS, THE JULIE A. ROGERS REVOCABLE LIVING TRUST, KEVIN  TODD, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION ON MOTIONS TO DISMISS**

This matter comes before the Court on Defendants' Motions to Dismiss. [Dkts. 58, 60 &

62.] For the reasons set forth below, the Magistrate Judge recommends that the Court **GRANT**

**IN PART** and **DENY IN PART** Defendants' motions.

1

# I.     Background[1]

Cmedia Services, LLC, ("Plaintiff" or "Cmedia") is a Delaware company that purchases advertising time from television and radio stations and then resells that time to third-party advertising agencies. [Dkt. 1 ¶¶ 1, 21.] Fine Light, Inc. d/b/a Finelight ("Finelight") is one such advertising agency. [*Id.* ¶¶ 3, 23.] Its CEO and sole shareholder is Sherman Rogers ("Rogers"), and one of Finelight's customer's is the healthcare company Humana, Inc. ("Humana"). [*Id.* ¶¶ 23, 39.]

In July 2006, Cmedia entered into a contract with Finelight ("the Contract") pursuant to which Cmedia agreed to purchase advertising time that would then be resold to Finelight for use by Humana. [*Id.* ¶ 23.] Cmedia's compensation was to be paid from Humana to Finelight, and then from Finelight to Cmedia. [*Id.* ¶¶ 23, 25.]

Between January 18, 2008 and July 18, 2008, Cmedia purchased advertising time that, pursuant to the Contract, was transferred to Finelight and then used by Humana. [*Id.* ¶ 27.] From April 14, 2008 through June 10, 2008, Humana paid Finelight $7,428,993.22 for this advertising time ("the Humana Payments"). [*Id.* ¶ 27.]

According to the Contract, Finelight was to transfer the Humana Payments and any associated fees and interest to Cmedia within five business days of receiving the payments. [*Id.* ¶ 28.] Finelight did not do so, and, after fees and unpaid interest, the amount due to Cmedia as of July 17, 2008 was $8,499,357.86. [*Id.* ¶ 29.] Cmedia's CEO—Michele Cardinal ("Cardinal")— then contacted Sherman Rogers to request payment. [*Id.* ¶ 30.] Rogers responded that Finelight

---

[1] The background as set forth below is drawn from the allegations in Plaintiff's complaint, which the Court accepts as true for the purposes of ruling on Defendant's motion to dismiss. *See, e.g.*, *CEnergy-Glenmore Wind Farm No. 1, LLC v. Town of Glenmore*, 769 F.3d 485, 487 (7th Cir. 2014).

would not pay Cmedia because the Humana Payments had been transferred to a third party: RMG Communications ("RMG") ("the Finelight-RMG Transfer"). [*Id.* ¶ 30.]

On July 25, 2008, Cmedia filed suit in Indiana state court against Finelight and RMG. [Dkt. 59-1 at 1 (state court complaint).][2] The state court suit alleged 1) that Finelight had breached the Contract with Cmedia [*id.* ¶¶ 4-6]; and 2) that the Finelight-RMG Transfer was a fraudulent transfer that should be voided. [*Id.* ¶¶ 8-13.]

On January 31, 2014, the Indiana court resolved these claims in favor of Cmedia. [Dkt 1 ¶ 32.] The court entered a final judgment against Finelight in the amount of $9,351,853,19, and the court entered an order avoiding the Finelight-RMG Transfer. [*Id.*]

Cmedia then began proceedings supplemental. [*Id.* ¶ 33.] On July 16, 2014, Cmedia deposed Sherman Rogers, and Rogers' testimony indicated that Rogers had potentially used a variety of loans and other transfers to divest Finelight of assets that could have been used to pay the state court judgment. [*Id.* ¶ 35.]

These transfers involved numerous corporate entities and third parties. The entities include Aquila, LLC ("Aquila"); Finelight Public Relations, Inc. ("Finelight PR"); Landco of Southern Indiana, LLC ("Landco"); Walnut Street Development LLC ("Walnut Street"); Heartland Realty of Bloomington, LLC ("Heartland Realty"); Heartland Development Group, LLC ("Heartland Development"); Crossroads Development Group, Inc. ("Crossroads"); YFD, LLC ("YFD"); FL West, LLC ("FL West"); Bloom Insurance Agency LLC ("Bloom Insurance"); Finelight Agency, LLC ("Finelight Agency"), and Bloom Media Services LLC

---

[2] Docket No. 59-1 is a copy of the state court complaint that was attached as an exhibit to Defendants' Motion to Dismiss. Going beyond the pleadings to consider such attachments would typically require the Court to convert Defendants' motion to one for summary judgment, *see* Fed. R. Civ. P. 12(d), but a court may take judicial notice of matters of public record without doing so. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997). The Court in this case may thus consider Plaintiff's state court complaint without converting the currently pending motions into motions for summary judgment.

("Bloom Media") (collectively the "Rogers Entities" or the "Corporate Defendants"). [*Id.* at 1-2.] The transfers also implicate two individuals—Kevin Todd ("Todd") and Julie A. Rogers ("Julie")—and the Julie A. Rogers Revocable Living Trust ("the Julie Trust"). [*Id.* at 2.]

The details of the transfers are set forth more fully below. In brief, however, Plaintiff alleges that Rogers executed various transfers that fraudulently moved funds from Finelight to the entities and individuals named above. Thus, in Counts V, VII, IX, XI, XIII, XV, XVII, XIX, XXI, XXIII, XXV, XXVII, XXIX, XXX, and XXXI of its complaint, Plaintiff asks the Court to avoid the transfers at issue and enter a money judgment in Plaintiff's favor in the amount of the allegedly fraudulent transfers. In addition, Plaintiff alleges that Sherman Rogers controlled and operated the Rogers Entities in a way that ignored their corporate existence and perpetuated Rogers' alleged fraud. Thus, in Counts I, VI, VIII, X, XII, XIV, XVI, XVIII, XX, XXII, XXIV, XXVI, and XXVIII of its complaint, Plaintiff asks the Court to pierce the corporate veil and enter a money judgment against the entities at issue in an amount equal to the state court judgment that Plaintiff has already obtained against Finelight and RMG. Finally, Plaintiff alleges that, in conducting the alleged transfers, Rogers committed deception, conversation, and fraud as those crimes are defined in the Indiana Code. Thus, in Counts II, III, and IV, Plaintiff asks the Court to award relief under the Indiana Crime Victims Relief Act ("the CVRA"). The Defendants have moved to dismiss each of these counts, [Dkts. 58, 60 & 62], and the Court now addresses Defendants' motions.

## II.    Legal Standard

To survive a Rule 12(b)(6) motion, a "complaint must 'state a claim to relief that is plausible on its face.'" *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must thus contain "either direct or inferential allegations respecting all the material elements necessary to sustain recovery" under the relevant legal theory. *See Twombly*, 550 U.S. at 562. Pleading only "labels and conclusions" or only "a formulaic recitation of the elements of a cause of action" will not suffice, nor will pleading facts that are "merely consistent" with a defendant's liability. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557)).

In addition, several of Plaintiff's claims include allegations of fraud. Under Rule 9(b), a plaintiff must "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). The primary purpose of this Rule is to give a defendant "fair notice" of a plaintiff's claim. *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). A plaintiff must therefore typically allege "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Serves, Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) (citations omitted). A plaintiff, in other words, must plead the "who, what, when, where, and how" of the fraud. *Id.*

In applying these principles, a court construes the complaint in the light most favorable to the plaintiff. *Yeftich*, 722 F.3d at 915. The court accepts all well-pleaded facts as true and draws all reasonable inference in favor of the plaintiff, but the court "need not accept as true statements of law or unsupported conclusory factual allegations." *Id.* A court typically may not consider matters outside the pleadings, *see* Fed. R. Civ. P. 12(d), but, as noted earlier, *see supra* note 2, a court may take judicial notice of matters of public record. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997). Here, Defendants have attached to

their motion to dismiss various records from Plaintiff's state court proceedings, [Dkts. 59-1 through 59-3], and the Court will accordingly consider those records as necessary in ruling on Defendants' motions to dismiss.

Defendants in this case have also raised several statute of limitations defenses. In general, dismissing a claim on this basis "is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). Such a dismissal, however, is appropriate "when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Id.* at 674-75.

### III.    Discussion

Plaintiff's claims fall into three categories: 1) claims under the CVRA; 2) claims for the avoidance of fraudulent transfers; and 3) claims for piercing the corporate veil. The Court addresses each category in turn.

### A.  Indiana Crime Victims Relief Act

The CVRA allows a person who has an unpaid liability or who has suffered financial harm as a result of certain criminal acts to pursue a civil action against the alleged criminal for an amount equal to three the times the actual damages incurred. Ind. Code § 34-24-3-1. Plaintiff in this case invokes the CVRA in alleging that Sherman Rogers committed deception (Count II); conversion (Count III); and fraud (Count IV). [Dkt. 1 ¶¶ 183-93.] Each of these causes of action is based on Rogers' alleged transfer of funds from Finelight to RMG. [*See id.*] As set forth in Plaintiff's complaint, this transfer occurred sometime before July 21, 2008, [*id.* ¶ 30], and Defendants have moved to dismiss Counts II, III, and IV on the grounds that they time-barred. [Dkt. 59 at 4-5.]

Actions under the CVRA are subject to a two-year statute of limitations. *Prime Mortgage USA, Inc. v. Nichols*, 885 N.E.2d 628, 638 (Ind. Ct. App. 2008). In this case, Plaintiff concedes that the allegedly criminal conduct occurred in 2008, such that Plaintiff's current complaint was filed well outside the two-year period following that conduct. [Dkt. 66 at 4.] Plaintiff nonetheless argues that Indiana's "discovery rule" operates to save the CVRA claims because Plaintiff did not discover Rogers' allegedly criminal conduct until Rogers' July 2014 deposition. [*Id.* at 4-5.]

Plaintiff is correct that CVRA claims are "subject to the discovery rule." *See Prime Mortgage*, 885 N.E.2d at 639. Under this rule, "'a cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another.'" *Id.* at 639-40 (citations omitted). The Court must thus ask whether Plaintiff knew, or, in the exercise of ordinary diligence, could have discovered Sherman Rogers' role in the Finelight-RMG Transfer more than two years before the March 16, 2015 filing of Plaintiff's current complaint.

The discovery rule sets out an objective standard that a court may apply as a matter of law. *See Martin Oil Mktg. Ltd. v. Katzioris*, 908 N.E.2d 1183, 1188 (Ind. Ct. App. 2009) ("The foregoing authority reflects that we apply an objective standard to the plaintiff's actions, not a subjective one."); *Doe v. United Methodist Church*, 673 N.E.2d 839, 844 (Ind. Ct. App. 1996) ("Under Indiana's objective standard for the application of the discovery rule, we must conclude, as a matter of law, that in the exercise of ordinary diligence, Doe should have discovered that she had sustained injury as a result of [defendant's conduct] in excess of two years before her lawsuit was filed. Accordingly, her action is time-barred.").

This objective standard "does not mandate that plaintiffs know with precision the legal injury that has been suffered;" instead, it "merely anticipates that a plaintiff be possessed of

sufficient information to cause him to inquire further in order to determine whether a legal wrong has occurred." *Perryman v. Motorist Mut. Ins. Co.*, 846 N.E.2d 683, 689 (Ind. Ct. App. 2006). The injured party must therefore "act with some promptness where the acts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist." *Id.* (citation omitted). The statute "begins to run from this point and not when advice of counsel is sought or a full blown theory of recovery developed." *Id.* (citation omitted). "Stated more succinctly, the law does not require a smoking gun in order for the statute of limitations to commence." *Id.*

Plaintiff's complaint in this case indicates that it knew of the Finelight-RMG Transfer in 2008, [Dkt. 1 ¶ 30], and indeed, Plaintiff was so certain at that time that a legal wrong had occurred that it sued Finelight and RMG in state court. [*Id.* ¶ 31; *see also* Dkt. 59-1 (state court complaint).] Plaintiff nonetheless maintains that in 2008 it lacked knowledge about Sherman Rogers' specific role in the Finelight-RMG Transfer, but Plaintiff's state court complaint belies this contention. In that complaint, Plaintiff alleged as follows:

> Between June 23, 2008 and July 21, 2008, telephone and email communications concerning Finelight's failure to pay Cmedia on the account took place between Michelle Cardinal, Chief Executive Officer of Cmedia, and Sherman Rogers, President of Finelight. Mr. Rogers is also the Member-Manager of RMG. Mr. Rogers also provided documents to Ms. Cardinal. In these communications and documents, Mr. Rogers disclosed that Finelight utilized the proceeds of the Humana account receivable earmarked for payment to Cmedia to make an inter-company loan to RMG in the amount of $6,465,277.88 (the "Funds"). Instead of paying Cmedia from accounts receivable proceeds it received from Humana, Finelight diverted and transferred the funds to RMG.

[Dkt. 59-1 ¶ 8.] Plaintiff further alleged that the "transfer of the Funds to RMG was made with actual intent to hinder, delay, or defraud Cmedia," and that "RMG was aware of Finelight's intent to hinder, delay, or defraud Cmedia." [*Id.* ¶¶ 11-12.]

Cmedia's own allegations thus indicate that, in 2008, it knew 1) that an allegedly fraudulent conveyance had occurred when the Humana Payments were transferred from Finelight to RMG; 2) that Rogers was the President of Finelight; 3) that Rogers was the Member-Manager of RMG; 4) that both companies had the intent to defraud Cmedia; and 5) that Rogers had in his possession documents indicating that the allegedly fraudulent conveyance had occurred. Based on this knowledge, a reasonable party in the position of Cmedia would have known that its rights had been invaded and—given the position that Rogers occupied at both Finelight and RMG, and given Rogers' access to the documents related to the allegedly fraudulent transfer—that person would have been on notice "that some claim against [Rogers] might exist." *Perryman*, 846 N.E.2d at 689. At the very least, that is, Plaintiff in 2008 was "possessed of sufficient information" to cause Plaintiff "to inquire further in order to determine whether" Rogers himself had committed a legal wrong. *Id.* The statute of limitations thus began to run at that time, *see id.*, and the statute of limitations therefore expired long before the filing of Plaintiff's current complaint.

The fact that Plaintiff only deposed Rogers in 2014 does not change this analysis. As noted above, the discovery rule "does not require a smoking gun in order for the statute of limitations to commence," and indeed, the discovery rule does not even require that "a full blown theory of recovery [be] developed." *Perryman*, 846 N.E.2d at 689. Thus, even if Plaintiff could not fully develop its CVRA theory until **after** the Rogers deposition, Plaintiff was still on notice well **before** the deposition that it should inquire further into Rogers' role in the alleged fraud. That notice is enough for the statute of limitations to begin to run, *see id.*, and the statute thus expired years before Plaintiff filed its current complaint. Plaintiff's CVRA claims should

accordingly be **DISMISSED**, and—because any attempt to re-plead those claims would not cure their untimely nature—that dismissal should be **WITH PREJUDICE**.

### B.  Avoiding Fraudulent Transfers

Counts V, VII, IX, XI, XIII, XV, XVII, XIX, XXI, XXIII, XXV, XXVII, XXIX, XXX, and XXXI of Plaintiff's complaint ask the Court to avoid allegedly fraudulent transfers and enter money judgments in Plaintiff's favor in the amount of the transfers. These claims are based on Indiana's version of the Uniform Fraudulent Transfer Act ("UFTA"), which provides as follows:

> Sec. 14. A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>>> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>> (B) intended to incur or believed or reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as the debts became due.

Ind. Code § 32-18-2-14. The next section of the act then provides as follows:

> Sec. 15. A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if:
>> (1) the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation; and
>> (2) the debtor:
>>> (A) was insolvent at that time; or
>>> (B) became insolvent as a result of the transfer or obligation.

Ind. Code § 32-18-2-15. Together, sections 32-18-2-14 and 32-18-2-15 set out two causes of action: the first cause of action involves "actual fraud" and allows a court to avoid a transaction if the transaction was executed "with actual intent to hinder, delay, or defraud any creditor of the

debtor." Ind. Code § 32-18-2-14(1). The second cause of action involves "constructive fraud" and allows a court to avoid a transaction that, *inter alia*, was executed "without [the debtor] receiving a reasonably equivalent value in exchange for the transfer or obligation." Ind. Code § 32-18-2-14(2)(A)-(B); *id.* § 32-18-2-15.

> The Indiana UFTA also includes a statute of limitations that provides as follows:

> A cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless brought as follows:
> > (1) If brought under section 14(1) of this chapter, an action is extinguished unless brought not later than the later of the following:
> > > (A) Four (4) years after the transfer was made or the obligation was incurred.
> > > (B) One (1) year after the transfer or obligation was or could reasonably have been discovered by the claimant.
> > (2) If brought under section 14(2) or 15(1) of this chapter, an action is extinguished unless it is brought not later than four (4) years after the transfer was made or the obligation was incurred.

Ind. Code § 32-18-2-19. The UFTA thus imposes a four-year statute of limitations for both "actual fraud" and "constructive fraud" claims. The statute begins to run from the date the transfer at issue was made, and the only exception is that a claim for "actual fraud" may be commenced up to one year after the transfer "was or could reasonably have been discovered by the claimant." With this background in mind, the Court addresses each of Plaintiff's fraudulent transfer claims.

### 1. Count V Against Aquila

Plaintiff maintains that Aquila is an LLC that was organized in 1996 with Rogers and Finelight as its sole members. [Dkt. 1 ¶¶ 44-46.] Plaintiff also maintains that Rogers owns one hundred percent of Aquila and maintains exclusive control over Aquila's business decisions. [*Id.* ¶¶ 47, 49.] Plaintiff then alleges that Finelight made three fraudulent transfers to Aquila: the

"Finelight-Aquila Loan," the "Finelight-Aquila Investment," and the "Finelight-Aquila Payments." [*Id.* ¶¶ 130-132.]

### a.   The Finelight-Aquila Loan

Plaintiff alleges that Finelight loaned $1,600,000 to Aquila on January 8, 2008, and that the loan constituted both "actual" and "constructive" fraud under the Indiana UFTA. [Dkt. 1 ¶¶ 194-197.] This loan, however, occurred more than four years before Plaintiff filed its current complaint. Plaintiff's "constructive" fraud claim is therefore time-barred, *see* Ind. Code § 32-18-2-19, and this claim should be **DISMISSED WITH PREJUDICE**.

Plaintiff's "actual" fraud claim rests on different footing. This claim may survive Defendants' motion to dismiss so long as it 1) contains sufficient factual matter to satisfy the above-described federal pleading standards; and 2) does not indicate that Plaintiff reasonably could have discovered the claim more than one year before filing its complaint.

### i.   Pleading Standards

Plaintiff's "actual" fraud claim requires Plaintiff to plead and later prove that the transfer was made "with actual intent to hinder, delay, or defraud" the creditor. Ind. Code § 32-18-2-14. Rule 9(b) applies to such a claim, *see, e.g.*, *Biomet, Inc. v. Fields*, No. 3:07-CV-346RM, 2008 WL 5191496, at *9 (N.D. Ind. Dec. 9, 2008), and Plaintiff must therefore allege the "who, what, when, where, and how" of the fraud. *See Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Serves, Inc.*, 536 F.3d 663, 668 (7th Cir. 2008).

Plaintiff in this case has alleged the specific amount of the allegedly fraudulent loan, the specific parties involved in the transaction, and the specific date on which the loan was made. [Dkt. 1 ¶ 130.] Plaintiff has also alleged that Sherman Rogers controlled both Finelight and

Aquila, [*see id.* ¶¶ 40, 49], such that Rogers was likely the specific person who made the decision to execute the loan.

Admittedly, Plaintiff has not alleged "where" this transfer occurred—*e.g.*, where the parties to the loan executed the relevant agreement—but the specificity of Plaintiff's other allegations nonetheless indicates that Plaintiff has pled enough facts to give Defendants "fair notice," *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994), of the transaction that is at issue. In addition, the requirements of Rule 9(b) are less stringent "when the details [of the alleged fraud] are within the defendant's exclusive knowledge." *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994); *accord, e.g.*, *Petri v. Gatlin*, 997 F. Supp. 956, 974 (N.D. Ill. 1997) ("Rule 9(b)'s requirements may be relaxed when specific details are within the defendants, exclusive knowledge or control."). Here, nothing suggests that Plaintiff has any reason to know exactly "where" Finelight and Aquila completed their loan, and so any deficiency in omitting this information is not a basis on which to dismiss Plaintiff's claim.

Defendants then argue that, even if Plaintiff has alleged the particular "circumstances" of the fraud, Plaintiff has not alleged enough facts to support an inference the Defendants had the "actual intent" to commit fraud. [Dkt. 59 at 12-13.] Under Rule 9(b), a plaintiff need only allege a defendant's fraudulent intent "generally." Fed. R. Civ. P. 9(b). The word "generally," however, is a relative term: "In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake." *Ashcroft v. Iqbal*, 556 U.S. 662, 686-87 (2009). Thus, "Rule 9 merely excuses a party from pleading [] intent under an elevated pleading standard. It does not give [the party] license to evade the less rigid—though still operative—strictures of Rule 8." *Id.*

In this case, then, Plaintiff must plead "actual intent to defraud" in a way that complies with Rule 8(a); Plaintiff, in other words, must plead enough factual matter for the Court to draw

the reasonable inference that Plaintiff's debtors actually intended to defraud Plaintiff. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

In Indiana, courts assess whether a transferor had fraudulent intent by evaluating eight factors known as the "badges of fraud." These badges are:

> 1. transfer of property by a debtor during the pendency of a suit;
> 2. transfer of property that renders the debtor insolvent or greatly reduces his estate;
> 3. a series of contemporaneous transactions which strip a debtor of all property available for execution;
> 4. secret or hurried transactions not in the usual mode of doing business;
> 5. any transaction conducted in a manner differing from customary methods;
> 6. a transaction whereby the debtor retains benefits over the transferred property;
> 7. little or no consideration in return for the transfer; and
> 8. a transfer of property between family members.

*Hoesman v. Sheffler*, 886 N.E.2d 622, 630 (Ind. Ct. App. 2008). No single factor is dispositive, and a claimant need not allege that each factor is present in a particular case. *See id.*

Defendant in this case maintains that Plaintiff has failed to allege the existence of these factors, [Dkt. 59 at 12-13], but a cursory review of the complaint belies this argument. First, the very reason that Plaintiff is pursuing its current lawsuit is that Finelight has not paid the state court judgment that Plaintiff previously obtained. [*See* Dkt. 1 ¶¶ 28-35.] The Court can thus reasonably infer that Finelight is insolvent and that Finelight's various transfers—to entities such as Aquila—helped render Finelight insolvent. Factor two, *supra*, thus supports an inference of fraudulent intent.

Next, Defendants themselves acknowledge that "Cmedia is seeking to avoid and recover almost 40 transfers" under the Indiana UFTA, [Dkt. 59 at 10.] Plaintiff has thus plainly pled a "series" of transactions that tend to frustrate the creditor's collection efforts. Also, Plaintiff has

14

pled that Rogers controls Aquila and the other Corporate Defendants. [*See, e.g.*, Dkt. 1 ¶¶ 49, 57, 61, 70, 74, 79, 84, 97, 103.] As such, Plaintiff has pled that Rogers retained control over the funds involved in the Finelight-Aquila Loan and the other transfers currently at issue, and factor six, *supra*, thus also supports an inference of fraudulent intent.

Finally, Plaintiff alleges that a host of the transactions at issue occurred during the pendency of Plaintiff's state court case, [*see, e.g.*, Dkt. 1 ¶¶ 138-39, 142, 152, 160], or were executed for little or no consideration. [*See, e.g.*, *id.* ¶¶ 141, 144, 147.] These factors do not specifically apply to the Finelight-Aquila Loan, but a court assessing fraudulent intent "must examine all the facts" and engage in "a thorough examination of the evidence." *Hoesman*, 886 N.E.2d at 630 (citation omitted). These other transactions thus imply that the Finelight-Aquila Loan was part of a series of transactions designed to frustrate Plaintiff's collection efforts, such that the Court can reasonably infer that—in the context of all events alleged in Plaintiff's complaint—the Finelight-Aquila Loan was executed with the actual intent to defraud Defendants' creditor. Plaintiff has accordingly pled enough factual matter to plausibly infer that the Finelight-Aquila Loan constituted "actual" fraud, and Defendant's motion to dismiss this claim on this basis should be **DENIED**.

**ii.    Reasonable Discovery**

As explained above, any claim of actual fraud based on the Finelight-Aquila loan can survive Defendant's motion to dismiss only if Plaintiff could not reasonably have discovered the claim until sometime within the one-year period before Plaintiff filed its March 2015 complaint. Plaintiff maintains that it could not have done so because Plaintiff was "unaware [of] the nature and extent of the transfers identified [in Plaintiff's complaint] until review of Finelight's financial documents produced shortly before and after the [July 2014] Rogers Deposition." [Dkt.

15

66 at 5.] Defendant, in contrast, claims that Plaintiff should reasonably have discovered the claims against the various Rogers Entities at some point shortly after the 2008 initiation of Plaintiff's state court lawsuit. [*See* Dkt. 59 at 9-10.]

As explained above, Plaintiff knew in July 2008 that Sherman Rogers controlled Finelight and RMG, and that Finelight had allegedly transferred funds to RMG. [*See* Dkt. 59-1 ¶ 8 (state court complaint); *see also* Dkt. 1 ¶ 30.] And, as explained above, Plaintiff's knowledge in July 2008 was sufficient to put Plaintiff on notice that Sherman Rogers had potentially committed certain fraudulent acts. Defendants now argue that the transfer to RMG should have caused Plaintiff to inquire more deeply into Rogers' finances during the state court litigation, with the implication that such additional inquiry necessarily would have revealed the transfers to Aquila and Rogers' other entities. [*See* Dkt. 59 at 9.]

This argument is flawed. Rogers expressly represented to Cmedia that the Humana Payments had been transferred to RMG. [Dkt. 1 ¶ 30.] Plaintiff accordingly filed its state court complaint specifically against Finelight and RMG. [*See* Dkt. 59-1 at 1.] It thus would have been eminently reasonable for Plaintiff to focus its discovery efforts during the state court litigation on those parties. Indeed, Indiana courts restrict discovery to material that is related to "the claim or defense of the **party** seeking discovery or the claim or defense of any other **party**." Ind. R. Trial P. 26(B)(1) (emphasis added). Seeking discovery about **other** entities—such as Aquila or the other Rogers Entities—thus likely would have resulted in relevance objections from Finelight and RMG, and Plaintiff therefore acted reasonably in restricting its discovery to Finelight and RMG themselves. As such, the allegations in Plaintiff's complaint—taken as true for the purpose of the motions to dismiss—do not suggest that a reasonable litigant in Cmedia's position would have had a basis to undertake the discovery that Defendants suggest.

16

In short, Plaintiff had no basis to inquire into the existence of other entities. Based on Plaintiff's current allegations, Plaintiff may have known about Rogers' transfer of funds to RMG, but this knowledge was hardly sufficient to alert Plaintiff to the fact that Rogers allegedly controlled entities **other** than RMG, and that Rogers had allegedly arranged for the transfer of **other** funds to **those** entities. The Court thus finds it unlikely that Plaintiff reasonably could have discovered the allegedly fraudulent transfers before it deposed Rogers in July 2014. Plaintiff's March 2015 complaint was therefore filed within the one-year period following Plaintiff's discovery of the alleged fraud, and Plaintiff's complaint regarding these transfers is not time-barred. *See* Ind. Code § 32-18-2-19.

This is not to say that Defendants cannot raise the statute of limitations as a defense on summary judgment or at trial. If, for example, Defendants put forth evidence showing that Plaintiff **did** depose Rogers in 2008 and that Rogers **did** disclose the existence of the transfers currently at issue, then Plaintiff's complaint may in fact be time-barred. At this stage of the litigation, however, the statute of limitations will only defeat a plaintiff's claim if the plaintiff "pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674-75 (7th Cir. 2009). Here, Plaintiff has not done so. Plaintiff, that is, has not pled facts from which the Court must infer that a reasonable party in Plaintiff's position necessarily would have discovered the Finelight-Aquila Loan, and so the statute of limitations does not bar Plaintiff's claim.

Based on the foregoing, Plaintiff has both 1) stated a plausible claim for actual fraud, and 2) has avoided pleading facts that establish that the statute of limitations bars Plaintiff's claim. As such, neither of Defendants' arguments for dismissal is persuasive, and Defendants' motion to dismiss the actual fraud claim based on the Finelight-Aquila Loan should be **DENIED**.

### b.  The Finelight-Aquila Investment

Plaintiff next alleges that Finelight invested $765,050 into Aquila by the end of 2010, [Dkt. 1 ¶ 131], and Plaintiff now claims this investment constituted both actual and constructive fraud under the Indiana UFTA. [Dkt. ¶¶ 194-97.] As with the Finelight-Aquila Loan, the constructive fraud claim is time-barred by the UFTA's four-year statute of limitations, and this claim should therefore be **DISMISSED WITH PREJUDICE**.

Plaintiff's actual fraud claim, however, is similar to Plaintiff's actual fraud claim based on the Finelight-Aquila Loan. First, Plaintiff has alleged enough facts that the Court may infer that the Finelight-Aquila Investment was part of a series of transaction that was actually intended to frustrate Plaintiff's collection efforts. *See supra* Part III.B.1.a.i. Indeed, the inference of fraudulent intent with respect to the Finelight-Aquila Investment is **stronger** than the inference with respect to the Finelight-Aquila Loan, as at least part of the Finelight-Aquila **Investment** likely occurred during the pendency of Plaintiff's state court litigation. *See Hoesman*, 886 N.E.2d at 630 (transfer "during the pendency of a suit" is more likely to be fraudulent). Plaintiff has accordingly satisfied the requirements of Rule 8(a) by sufficiently alleging Defendants' fraudulent intent.

Second, Plaintiff has alleged enough facts to give Defendant "fair notice" of the transfer at issue: Plaintiff has alleged that Finelight invested a certain amount of money into Aquila, which amount was "in addition to, and booked separately from, the Finelight-Aquila Loan," and which amount was invested by the end of 2010. [Dkt. 1 ¶ 131.] This allegation admittedly omits certain details, such as the exact dates of the investment, but again, the requirements of Rule 9(b) may be relaxed when the details of the fraud are within the exclusive control of the defendant. Here, Plaintiff notes that—although it did receive certain documents from Finelight during its

state court proceedings—those documents only included Finelight's bank statements for a period dating back to May 1, 2010. [Dkt. 68 at 4.] Thus, Plaintiff at this time cannot allege the specific, pre-2010 dates on which Finelight invested the money at issue into Aquila, and the Court thus finds that Plaintiff has satisfied the requirements of Rule 9(b).

Finally, the Court has already explained why Plaintiff could not reasonably have discovered the Finelight-Aquila transactions until less than one year before Plaintiff filed its current complaint. *See supra* Part III.B.1.a.ii. Thus, for the purposes of the current motion, Plaintiff's actual fraud claim based on the Finelight-Aquila Investment is not time barred, and Defendant's motion to dismiss this claim should accordingly be **DENIED**.

### c. The Finelight-Aquila Payments

Plaintiff alleges that "Finelight paid $58,875.75 to Hawker Beechcraft Corp. for aircraft purchase or maintenance costs on behalf of Aquila from May 4, 2010 through October 31, 2011 (the 'Finelight-Aquila Payments')," [Dkt. 1 ¶ 132], and Plaintiff now claims these payments constituted actual and constructive fraud. [Dkt. ¶¶ 194-97.]

As described above, the UFTA imposes a four-year statute of limitations on constructive fraud claims. Some of the payments occurring between May 4, 2010 and October 31, 2011 thus occurred outside the four-year window pre-dating Plaintiff's March 16, 2015 complaint. Plaintiff has not differentiated between the specific payments at issue, and the Magistrate Judge thus recommends that the Court **DISMISS** Plaintiff's constructive fraud claim **WITHOUT PREJUDICE**. If Plaintiff intends to pursue a constructive fraud claim based on these payments, then Plaintiff may re-plead this claim with respect to those payments that occurred within the four-year period pre-dating Plaintiff's complaint.

Next, Plaintiff's actual fraud claim is similar to the actual fraud claims based on the

Finelight-Aquila Investment and the Finelight-Aquila Loan. Plaintiff, that is, has pled enough

facts to render it plausible that the transfer was made with the actual intent to defraud; Plaintiff

has pled enough facts to give Defendants fair notice of which payments are at issue; and Plaintiff

has **not** pled facts demonstrating that its claim is barred by the statute of limitations. Defendants'

motion to dismiss the actual fraud claim should therefore be **DENIED**.

## 2. Count VII Against Finelight PR

Plaintiff alleges that Finelight PR is a New York corporation over which Sherman Rogers

has exercised exclusive control since his acquisition of the corporation in 2002. [Dkt. 1 ¶¶ 53-

57.] Plaintiff then alleges that Finelight PR "owed $370,540.00 to Finelight as of the end of 2012

pursuant to a loan made from Finelight to Finelight PR," and that this loan amounted to actual

and constructive fraud. [*Id.* ¶¶ 133, 208-11.]

Plaintiff in this case has not alleged "when," "where," or "how" this alleged loan was

executed, but again, Rule 9(b) does not demand such specificity when the relevant facts are

exclusively within the defendants' knowledge. *See Petri*, 997 F. Supp. at 974.  Here—as with the

Finelight-Aquila Investment—Plaintiff acknowledges that it has received certain documents

from Finelight, but Plaintiff notes that those documents do not contain the details of the above-

described loan. [Dkt. 66 at 6 & n.3.] Plaintiff at this point has thus stated its claims with as much

specificity as possible, and Rule 9(b) does not justify dismissing Plaintiff's claims. *See, e.g.*,

*Petri*, 997 F. Supp. at 974 (dismissal inappropriate where plaintiff "alleged all of the details [it]

reasonably could have been expected to allege").

This of course does not mean that the claims are viable: Because Plaintiff has not alleged

the particular date on which the loan was made, any claims related to the loan may be time-

20

barred. *See* Ind. Code § 32-18-2-19. And, as noted above, the Indiana UFTA does not grant plaintiffs a one-year grace period for bringing newly discovered "constructive" fraud claims. Thus, even if Plaintiff may pursue an "actual" fraud claim on the grounds that it only recently discovered the Finelight-PR loan, Plaintiff's "constructive" fraud claim may be time-barred.

Resolving this issue, however, must wait until a later date: "a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations," *Cancer Found., Inc.*, 559 F.3d at 674, and Plaintiff's failure to plead facts indicating that its claims are timely is consequently not fatal to its claims. As such, Defendants' motion to dismiss Count VII should be **DENIED**.

### 3. Count IX Against Landco

Landco is allegedly an Indiana LLC over which Rogers has exercised exclusive control since he acquired the company in 2004. [Dkt. 1 ¶¶ 58-61.] Plaintiff claims that Finelight and Landco were involved in two fraudulent transactions: the "Manors-Landco Transfer" and the "Finelight-Landco Transfer."

#### i. The Manors-Landco Transfer

On January 20, 2005, Landco allegedly purchased $1,372,500 of real estate in the Manors Subdivision in Monroe County, "which purchase, on information and belief, was facilitated by funds transferred from Finelight to Landco (the 'Manors-Landco Transfer')." [Dkt. 1 ¶¶ 134-36.] Plaintiff alleges that this transfer constituted both "actual" and "constructive" fraud, [*id.* ¶¶ 223-26], but this transfer occurred more than four years before Plaintiff filed suit. Plaintiff's constructive fraud claim is therefore time-barred, and it should be **DISMISSED WITH PREJUDICE**.

Plaintiff's actual fraud claim, in contrast, is similar to the claims based on the Finelight-Aquila Loan and the Finelight-Aquila Investment.[3] Plaintiff, that is, has alleged enough facts that, in the context of Plaintiff's entire complaint, the Court can reasonably infer that Defendant did have the actual intent to defraud Plaintiff, and Plaintiff has not alleged facts indicating that it reasonably should have discovered the claim more than one year before it filed suit.

Defendant then argues that the claim must nonetheless be dismissed because, as a general rule, pleading "on information and belief" is insufficient to satisfy Rule 9(b). [*See* Dkt. 59 at 11 (citing *Richter v. Corporate Fin. Associates, LLC*, No. 1:06CV1623-JDT-TAB, 2007 WL 1164649, at *2 (S.D. Ind. Apr. 19, 2007)).] This rule may be valid, but, as stated in the very case Plaintiff cites, an exception to this rule exists when "the facts are peculiarly within the adversary's knowledge." *Richter*, 2007 WL 1164649, at *2. Here, the Court has already noted that Plaintiff only received Finelight's bank statements for a period dating back to May 2010. Plaintiff thus cannot say at this point whether Finelight actually did provide the funds for the January 2005 purchases at issue, and so the relevant facts are indeed "peculiarly within [Defendants'] knowledge." Any omission of additional facts is therefore not fatal to Plaintiff's claim, and Defendants' motion to dismiss Plaintiff's actual fraud claim should be **DENIED**.

---

[3] The Court acknowledges that the Manors-Landco Transfer allegedly occurred in January 2005, more than three years before the filing of Plaintiff's state court complaint, and more than one year before Plaintiff entered the Contract with Finelight. The Indiana UFTA, however, specifically states that a transfer may be "fraudulent as to a creditor" regardless of "whether the creditor's claim arose **before or after the transfer was made or the obligation was incurred**." Ind. Code § 32-18-2-14 (emphasis added). Further, the timing of such a transfer is only one of several badges of fraud to be assessed in the fraudulent intent analysis. *See Hoesman*, 886 N.E.2d at 630. Thus, even if the Manors-Landco Transfer was not made "during the pendency of a suit," *id.*, the other badges of fraud still support an inference of intent to defraud: Plaintiff, for example, has alleged 1) that the transfer was a part of an extensive "series" of transactions that stripped its debtors of their property [*see* Dkt. 1 ¶¶ 127-74]; 2) that its debtors "retain[ed] benefits over the transferred property" by virtue of Rogers' control over Landco [*id.* ¶¶ 59, 61]; and 3) that the transfer was made for "little or no consideration." [*See id.* ¶ 134; *see also* Dkt. 66 at 9.] Plaintiff has accordingly alleged enough factual matter for the Court to infer that—notwithstanding the timing of the Manors-Landco Transfer—the transaction was indeed fraudulent.

ii.     **The Finelight-Landco Loan**

Plaintiff alleges that, "[a]ccording to Finelight's tax returns, Finelight loaned $14,000.00 to Landco in 2012 (the 'Finelight-Landco Loan'), the outstanding balance of which was $14,000.00 as of the end of 2012." [Dkt. 1 ¶ 137.] Plaintiff now claims that the loan constituted actual and constructive fraud. [*Id.* ¶¶ 223-26.]

Plaintiff's actual fraud claim based of this transaction is similar to Plaintiff's actual fraud claims based on the Finelight-Aquila Loan and the Finelight-Aquila Investment. Defendants' motion to dismiss this claim should accordingly be **DENIED**.

In contrast, Plaintiff's constructive fraud is not sufficient. To prevail on such a claim, a claimant must show, *inter alia*, that the transfer from the debtor (*i.e.*, Finelight) was made to the transferee (*i.e.*, Landco) without the debtor "receiving a reasonably equivalent value in exchange for the transfer or obligation." Ind. Code § 32-18-2-14(2). Plaintiff in this case has recited this statutory requirement, [*see* Dkt. 1 ¶ 225], but such "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8(a). *See Twombly*, 550 U.S. at 557. In addition, Plaintiff's complaint contains no other allegations suggesting that the loan was extended to Landco for inadequate consideration, and Plaintiff has conceded that it has obtained Finelight's bank records for a period dating back to May 1, 2010. Because the loan at issue was extended in 2012, [*see* Dkt. 1 ¶ 137], and because Plaintiff has access to Finelight's finances for this period, Plaintiff should reasonably be able to allege its cause of action with greater specificity. The Magistrate Judge thus concludes that Defendants' motion to dismiss the constructive fraud claim based on the Finelight-Landco Loan should be **GRANTED**. This dismissal, however, should be without prejudice to plaintiff's right to re-plead the claim in greater detail.

### 4. **Count XI Against Walnut Street**

Walnut Street is allegedly an Indiana LLC whose President and sole member is Sherman Rogers. [Dkt. 1 ¶¶ 6, 64.] Plaintiff contends that Rogers has maintained "exclusive control over the business decisions of Walnut Street" since the LLC's organization in 2004. [*Id.* ¶¶ 64, 66.] Plaintiff then alleges that, sometime in 2010, "Finelight transferred at least $17,000.00 to Walnut Street . . . to acquire certain real estate in Bloomington, Indiana, (the 'Finelight-Walnut Street Transfer')," and that the proceeds from the resulting sale of the real estate "were never paid to Finelight." [*Id.* ¶ 138.] Count XI alleges that this transfer constituted actual and constructive fraud. [*Id.* ¶¶ 238-40.]

Because the transfer occurred sometime in 2010, the transfer occurred more than four years before the filing of Plaintiff's March 2015 complaint. Plaintiff's constructive fraud claim is therefore barred by the UFTA's statute of limitations, and this claim should be **DISMISSED WITH PREJUDICE**.

Plaintiff's actual fraud claim, however, is similar to the claims premised on the Finelight-Aquila Loan and the Finelight-Aquila Investment. Plaintiff, in other words, has alleged enough facts for the Court to infer that the transfer was made with the actual intent to frustrate Plaintiff's collection efforts; Plaintiff has alleged enough facts to give Defendants fair notice of the transfer at issue; and Plaintiff has not pled facts suggesting that Plaintiff should have discovered this claim more than one year before the filing of its complaint. Defendants' motion to dismiss the actual fraud claim should accordingly be **DENIED**.

### 5. **Count XIII Against Heartland Realty**

Heartland Realty is allegedly an Indiana LLC over which Rogers has maintained exclusive control since the LLC's organization in 2004. [Dkt. 1 ¶¶ 67-70.] Plaintiff claims that

"Finelight loaned at least $3,000.00 to Heartland Realty (the 'Finelight-Heartland Realty Loan'), the full amount of which was due and owing as of the end of 2012," [*id.* ¶ 139], and Plaintiff now claims that the loan constituted both actual and constructive fraud. [*Id.* ¶¶ 251-54.]

The claim against Heartland Realty is a virtual carbon copy of the claim against Finelight PR, as both claims assert that allegedly fraudulent loans were outstanding as of the end of 2012. In addition, Plaintiff in both cases has represented that the documents it has received from Finelight do not allow Plaintiff to plead its claim with any additional detail. [*See* Dkt. 66 at 6.] Thus, just as with the Finelight PR claims, Defendants' motion to dismiss the Heartland Realty claims should be **DENIED**.

### 6. Count XV Against Heartland Development

Plaintiff alleges that Heartland Development is an Indiana LLC over which Rogers has maintained exclusive control since the LLC's formation in 2004. [Dkt. 1 ¶¶ 71-74.] Plaintiff contends that "Finelight loaned at least $139,683.00 to Heartland Development (the 'Finelight-Heartland Development Loan'), $71,183.00 of which was due and owing as of the end of 2012," [*id.* ¶ 140], and Plaintiff claims that this loan amounted to actual and constructive fraud. [*Id.* ¶¶ 265-68.] These claims are similar to the claims against Finelight PR and Heartland Realty, and for the same reasons as described in addressing those claims, Defendants' motion to dismiss these claims should be **DENIED**.

### 7. Count XVII Against Crossroads

Plaintiff alleges that Crossroads is an Indiana corporation over which Rogers has maintained exclusive control since the entity's incorporation in 2004. [Dkt. 1 ¶¶ 75-79.] Plaintiff then asserts that two transfers in which Crossroads was involved were fraudulent: the Landco-Crossroads Transfer and the Finelight-Crossroads Transfer.

### i.      The Landco-Crossroads Transfer

"On or about April 22, 2004," Crossroads allegedly "purchased from Landco for the sum of zero dollars certain real estate, which was subdivided on or about September 8, 2005 into two (2) parcels" comprising approximately two acres of land. [Dkt. 1 ¶ 141.] This transfer allegedly amounted to actual and constructive fraud, [*see id.* ¶¶ 279-82], but this transfer occurred well beyond the four-year statute of limitations for the avoidance of such transfers. The constructive fraud claim based on this transfer must therefore be **DISMISSED WITH PREJUDICE**.

Plaintiff's actual fraud claim, in contrast, is similar to the actual fraud claim based on the Finelight-Aquila Loan and the Finelight-Aquila Investment.[4] Again, that is, Plaintiff has alleged enough facts for the Court to infer that the Landco-Crossroads transfer was made with the actual intent to defraud Plaintiff; Plaintiff has alleged enough facts to give Defendants fair notice of the transfer at issue; and Plaintiff has not pled facts showing that Plaintiff should have discovered this claim more than one year before filing its complaint. Defendants' motion to dismiss the actual fraud claim should accordingly be **DENIED**.

### ii.      The Finelight-Crossroads Transfer

Plaintiff claims that "Finelight loaned $6,500.00 to Crossroads in 2011 and 2012 (the 'Finelight-Crossroads Loan'), the outstanding balance of which was $6,500.00 as of the end of 2012." [Dkt. 1 ¶ 142.] Plaintiff again alleges both actual and constructive fraud. [*Id.* ¶¶ 279-82.]

Because the loan at issue occurred in 2011 or 2012, the four-year statute of limitations does not necessarily bar Plaintiff's claims. The constructive fraud claim in this count, however, is similar to Plaintiff's constructive fraud claim based on the Finelight-Landco Loan, insofar as

---

[4] The timing of the Landco-Crossroads Transfer is also similar to the Manors-Landco Transfer, insofar as both transactions allegedly occurred before Plaintiff even entered the Contract with Finelight. As explained earlier, however, *see supra* note 3, this timing does not preclude an inference of actual intent to defraud.

Plaintiff has again failed to plead any facts suggesting that the loan was extended for less than adequate consideration. The constructive fraud claim based on the Finelight-Crossroads Transfer should therefore be **DISMISSED WITHOUT PREJUDICE**.

Likewise, Plaintiff's actual fraud claim in this Count is similar to Plaintiff's actual fraud claim based on the Finelight-Landco Loan. Thus, for the same reasons stated in assessing that claim, Defendants' motion to dismiss the actual fraud claim should be **DENIED**.

### 8. Count XIX Against YFD

Plaintiff alleges that YFD is an Indiana LLC over which Rogers has exercised exclusive control since the LLC's formation in 2007. [Dkt. 1 ¶¶ 85-88.] Plaintiff then alleges that YFD was involved in various real estate transactions with Rogers and the Rogers entities: First, YFD allegedly used funds transferred from Finelight to buy Rogers' personal residence [*id.* ¶ 143]; second, YFD allegedly purchased various properties from Landco for zero dollars [*id.* ¶ 144]; third, YFD allegedly used funds transferred from Finelight to buy additional properties [*id.* ¶ 145-46]; and fourth, YFD allegedly purchased various properties from Rogers for zero dollars. [*Id.* ¶ 147.] Plaintiff finally alleges that Finelight loaned YFD $360,000 on January 8, 2008, [*id.* ¶ 148], and Plaintiff now asks the Court to set aside each of these transfers on the basis that they constituted actual or constructive fraud. [*Id.* ¶¶ 293-96.]

Plaintiff's own allegations indicate that the loan occurred in 2008 and that each of the real estate transactions occurred in 2007. [*Id.* ¶¶ 143-48.] Each of Plaintiff's constructive fraud claims is thus based on a transaction that occurred outside the relevant statute of limitations, and Plaintiff's constructive fraud claims should be **DISMISSED WITH PREJUDICE**.

Plaintiff's actual fraud claims, in contrast, are similar to the actual fraud claims described above: Plaintiff, that is, has alleged enough facts in its complaint as a whole to support an

inference that the transfers were intended to defraud Plaintiff; Plaintiff has identified the specific dates, dollars amounts, and properties at issue, [*see id.* ¶¶ 143-48], such that Defendant has fair notice of which transactions are at issue; and Plaintiff has not alleged facts indicating that Plaintiff should have discovered the claims more than one year before the filing of its current lawsuit. Defendants' motion to dismiss the actual fraud claims should thus be **DENIED**.

### 9. Count XXI Against FL West

FL West is allegedly an Indiana LLC that Rogers has controlled since 2007. [Dkt. 1 ¶¶ 89-90, 97.] Plaintiff maintains that three of FL West's transactions were fraudulent: the Finelight-FL West Loan, the Finelight-FL West Payments, and the RMG-FL West Payments.

#### i.    The Finelight-FL West Loan

Finelight allegedly loaned $650,000 to FL West on January 8, 2008. [Dkt. 1 ¶ 150.] This loan was made more than four years before Plaintiff's current complaint, and Plaintiff's constructive fraud claim on the basis of this loan should be **DISMISSED WITH PREJUDICE**. In contrast, any actual fraud claim on the basis of this loan is similar to the actual fraud claims described with respect to transactions such as the Finelight-Aquila Loan and the Finelight-Aquila Investment. Defendants' motion to dismiss the actual fraud claims should thus be **DENIED**.

#### ii.   The Finelight-FL West Payments and the RMG-FL West Payments

Plaintiff alleges that, "[a]ccording to Finelight's bank records, Finelight made payments to FL West totaling $551,000.00 from June 15, 2010 through September 23, 2013" and that "[a]ccording to RMG's bank records, RMG made payments to FL West totaling $323,745.59 from May 10, 2010 through September 17, 2012." [Dkt. 1 ¶¶ 151-52.]

Based on these allegations, it appears that some of the payments at issue occurred outside the four-year statute of limitations for a constructive fraud claim. Plaintiff, however, has not

described or provided dates for the specific payments at issue, and Plaintiff's constructive fraud claims based on these payments should be **DISMISSED WITHOUT PREJUDICE**. If Plaintiff intends to pursue constructive fraud claims on the basis of these payments, then Plaintiff should re-plead those claims with respect only to those payments that occurred within the four-year statute of limitations.

Plaintiff's actual fraud claims, in contrast, are similar to the claims based on the Finelight-Aquila Payments. Thus, for the reasons discussed above, Defendants' motion to dismiss Plaintiff's actual fraud claims in this Count should be **DENIED**.

### 10. Count XXIII Against Bloom Insurance

Bloom Insurance is allegedly an Indiana LLC over which Rogers has maintained exclusive control since the LLC's formation in 2007. [Dkt. 1 ¶¶ 98-103.] Plaintiff claims that, "[a]ccording to RMG's bank records, RMG has made payments totaling at least $2,290,336.19 to, or for the benefit of, Bloom Insurance since April of 2008[.]" [*Id.* 1 ¶ 153.] Plaintiff maintains that each of these payments constituted actual or constructive fraud. [*Id.* ¶¶ 323-26.]

As with the Finelight-FL West Payments and the RMG-FL West Payments, Plaintiff has failed to differentiate between those payments that were made within four years of the filing of its complaint and those that were not. Plaintiff's constructive fraud claim on the basis of the Bloom Insurance payments should therefore be **DISMISSED WITHOUT PREJUDICE**, and Plaintiff should re-plead its constructive fraud claim in a way that alleges constructive fraud only with respect to those claims that are not time-barred.

Plaintiff's actual fraud claims, in contrast, are similar to the claims based on the Finelight-Aquila Payments. Thus, for the reasons discussed above, Defendants' motion to dismiss Plaintiff's actual fraud claims in this Count should be **DENIED**.

### 11. Count XXV Against Finelight Agency

Finelight Agency is allegedly an Indiana LLC that Rogers has controlled since 2009. [Dkt. 1 ¶¶ 109-12.] Based on Rogers' deposition testimony, Plaintiff alleges that "Finelight Agency has no employees and was created to enter into contracts with third parties that would have otherwise been unwilling to do business with Finelight due to Finelight's 'derogatory credit.'" [*Id.* ¶ 154.] Thus, a third party would sign a contract with Finelight Agency, and Finelight Agency, in turn, would enter into a separate contract with Finelight, through which Finelight would provide the actual services specified in the original contract. [*Id.* ¶¶ 155-56.]

Plaintiff then claims that three types of allegedly fraudulent transactions occurred: first, Finelight Agency "received payments from third parties for work performed by Finelight, which funds, upon information and belief, were never remitted to Finelight;" second, Finelight granted promissory notes "in favor of Finelight Agency . . . in the amount of $1,000,000.00 dated November 1, 2010; $2,000,000.00 dated January 1, 2012; and $3,000,000.00 dated October 1, 2012;" and third, Finelight and RMG "made payments to Finelight Agency in addition to those made pursuant to the [promissory notes.]" [Dkt. 1 ¶¶ 157-59.] Plaintiff then asserts constructive and actual fraud claims on the basis of these payments. [*Id.* ¶¶ 340-43.]

Plaintiff's constructive fraud claims must be **DISMISSED WITHOUT PREJUDICE**. Just as with the claim based on the Finelight-Landco Loan, Plaintiff has alleged no facts indicating that Finelight Agency received the transfers without providing "a reasonably equivalent value" in return. Ind. Code Ann. § 32-18-2-14(2). Plaintiff's constructive fraud claims are thus missing a required element of the cause of action, *see id.*, and Plaintiff's claims cannot succeed as currently pled. Additionally, at least some of the transactions at issue appear to have occurred more than four years prior to the filing of Plaintiff's complaint. Plaintiff should

therefore re-plead its constructive fraud claims in a way that alleges such fraud only with respect to those claims that are not time-barred.

Plaintiff's actual fraud claims, in contrast, are similar to the claims based on the Finelight-Aquila Payments, and, for the reasons discussed above, Defendants' motion to dismiss Plaintiff's actual fraud claims in this Count should be **DENIED**.

### 12. Count XXVII Against Bloom Media

Plaintiff claims that Bloom Media is an Indiana LLC that has been under Rogers' exclusive control since its formation in 2013. [Dkt. 1 ¶¶ 114-117.] Plaintiff then claims that "Finelight granted a promissory note in favor of Bloom Media in the amount of $200,000.00 dated February 21, 2013," [*id.* ¶ 160], and that this note was a fraudulent transfer that must be set aside. [*Id.* ¶¶ 356-359.]

Again, Plaintiff's constructive fraud claim fails because Plaintiff has not alleged any facts suggesting that this loan was granted without Finelight receiving reasonably equivalent in return. And again, Plaintiff's actual fraud claim is similar to the actual fraud claims discussed above. As such, the constructive fraud claim should be **DISMISSED WITHOUT PREJUDICE**, and the motion to dismiss the actual fraud claim should be **DENIED**.

### 13. Count XXIX Against Julie Rogers and Count XXX Against the Julie Trust

Sherman Rogers and Julie Rogers ("Julie") were married until May 4, 2013, at which time they executed a Decree of Dissolution of Marriage, Waiver of Final Hearing, and Settlement Agreement. [Dkt. 1 ¶¶ 120-21.] Plaintiff alleges that, sometime in 2013, Finelight "transferred a 2009 Yukon Denali, VIN No. 1GKFK06209R191736, to Julie . . . (the 'Finelight-Julie Transfer')." [*Id.* ¶ 161.] Plaintiff then alleges that Julie was involved in three real estate transactions: these were the "Landco-Julie Transfer," in which Landco transferred two parcels of

property to Julie on June 14, 2013; the "YFD-Julie Transfer," in which YFD transferred three

parcels of property to Julie on May 22, 2013; and the "FL West-Julie Transfer," in which FL

West granted a $1,690,000 mortgage in favor of Julie on property located at 1801 S. Liberty Dr.,

Bloomington, IN 47403. [*Id.* ¶¶ 162-64.] Julie then allegedly transferred five of these properties

to a trust in her name (the "Julie-Trust Transfers"). [*Id.* ¶ 166.] Plaintiff now claims in Counts

XXIX and XXX that each of these transfers was a fraudulent conveyance that must be set aside.

[*Id.* ¶¶ 372-79.]

In contrast to many of the claims already discussed, Plaintiff's claims in these Counts are

plainly timely, as each of the "Julie" transfers occurred well within the four-year statute of

limitations for asserting that a transfer was fraudulent. In addition, Plaintiff's claims in these

Counts specifically identify the properties at issue, the dates on which the transfers were made,

and the dollar amounts involved in the transactions. [*See* Dkt. 1 ¶¶ 161-64.] The complaint thus

contains specific information regarding the "circumstances" of the alleged fraud, and Defendants

should therefore have "fair notice" of which transactions are at issue. These Counts have thus

satisfied this aspect of Rule 9(b).

Defendants nonetheless insist that the claims must be dismissed. They maintain that, even

if Plaintiff has particularly stated the "circumstances" of the alleged fraud, Plaintiff has failed to

plead facts supporting a plausible inference that the transfers satisfied the elements required to

prove either "actual" or "constructive" fraud. [*See* Dkt. 63 at 3-6.]

As noted above, a claim for "actual" fraud requires a showing that the transfer at issue

was made "with actual intent to hinder, delay, or defraud [the plaintiff.]" Ind. Code § 32-18-2-

14(1). And, as noted above, a plaintiff pleading such intent must set forth enough factual matter

for the Court to draw the reasonable inference that the plaintiff's debtors actually intended to

defraud the plaintiff. *See Iqbal*, 556 U.S. at 678. This, in turn, requires an assessment of

Indiana's "badges" of fraud:

>    1. transfer of property by a debtor during the pendency of a suit;
>    2. transfer of property that renders the debtor insolvent or greatly reduces his estate;
>    3. a series of contemporaneous transactions which strip a debtor of all property available for execution;
>    4. secret or hurried transactions not in the usual mode of doing business;
>    5. any transaction conducted in a manner differing from customary methods;
>    6. a transaction whereby the debtor retains benefits over the transferred property;
>    7. little or no consideration in return for the transfer; and
>    8. a transfer of property between family members.

*Hoesman*, 886 N.E.2d at 630. Defendant maintains that Plaintiff has made "no allegations

regarding the existence of the badges of fraud," [Dkt. 64 at 4,] but this argument ignores many of

the complaint's allegations. First, Plaintiff alleges that the transfers from the Rogers Entities to

Julie and the Julie Trust occurred in the spring and summer of 2013. [*See* Dkt. 1 ¶¶ 161-66.] This

was during the period in which Plaintiff's state court action was pending against Finelight and

RMG, [*see id.* ¶¶ 29-32], and the first badge of fraud thus supports an inference that the transfers

were made with fraudulent intent. Plaintiff then alleges that certain of the transfers were made

"for zero dollars," [*id.* ¶¶ 162-63,] and that the transfers were made to Julie Rogers from entities

that were controlled by Julie's husband, Sherman Rogers. [*See id.* ¶¶ 61, 88, 97, 161-66.] The

seventh and eighth badges of fraud thus also support an inference that the transfers were made

with the intent to defraud Plaintiff.

   Finally, Plaintiff alleges that the Finelight-Julie Transfer was part of a series of transfers

that prevented Plaintiff from executing its judgment against Finelight by stripping Finelight of

the property necessary for such execution. [*See, e.g.*, *id.* ¶ 161 (Finelight-Julie Transfer); ¶ 131

(Finelight-Aquila Investment); ¶ 137 (Finelight-Landco Loan); ¶ 138 (Finelight-Walnut Street

Transfer); ¶ 139 (Finelight-Heartland Realty Loan); ¶ 148 (Finelight-YFD Loan).] The third

badge of fraud thus supports an inference that these transfers were made with the actual intent to defraud Plaintiff.

Plaintiff implicitly concedes that some of the badges of fraud—such as badge six—may not be present with respect to the Julie Transfers, [*see* Dkt. 67 at 5-6], but, as previously explained, a plaintiff need not plead each and every badge of fraud to establish actual intent to defraud. *See Hoesman*, 886 N.E.2d at 630 (citations and quotation marks omitted) ("The existence of several of these badges may warrant an inference of fraudulent intent[.] . . . There is no precise formula for drawing the line as to when there are sufficient indicia supporting a finding of fraud."). In addition, Defendant's reply does not challenge Plaintiff's analysis of the badges of the fraud, [*see* Dkt. 72], and, in the absence of such a challenge, the Court finds that the circumstances outlined above do in fact support a plausible inference that the Julie Transfers were made with the actual intent to defraud Plaintiff. Defendants' motion to dismiss Plaintiff's actual fraud claims should therefore be **DENIED**.

Defendants then challenge Plaintiff's constructive fraud claim. A constructive fraud claim requires a two-part analysis. First, Plaintiff must plead and then prove that a debtor (*e.g.*, Finelight, YFD, Landco, or FL West) transferred property to Julie "without receiving a reasonably equivalent value in exchange for the transfer or obligation." Ind. Code § 32-18-2-14(2). Second, Plaintiff must additionally plead and prove that the debtor 1) "was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction," 2) that the debtor "intended to incur or believed or reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as the debts became due," 3) that the debtor "was insolvent" at the

time of the transfer; or 4) that the debtor "became insolvent as a result of the transfer[.]"  Ind. Code § 32-18-2-14(2); *id.* § 32-18-2-15(2).

Defendants first argue that Plaintiff has not pled any facts suggesting that the transfers to Julie were made "without receiving a reasonably equivalent value." [Dkt. 63 at 5.] This assertion is correct with respect to the Finelight-Julie and FL West-Julie Transfers, as Plaintiff's allegations state only that Julie received from these entities 1) a 2009 Yukon Denali and 2) a $1,690,000 mortgage. [Dkt. 1 ¶¶ 161, 164.] The allegations contain no reference whatsoever to the consideration that Julie may have paid in exchange for these transfers. [*See id.*]

In contrast, Defendant's assertion with respect to the Landco-Julie and YFD-Julie transfers is incorrect. With respect to these claims, Plaintiff alleges that, "[a]ccording to Monroe County property tax records," the transfers of property from Landco and YFD to Julie were made "for zero dollars." [*Id.* ¶¶ 162-63.] Plaintiff's complaint thus does contain facts suggesting that these transfers were not executed in exchange for equivalent value.

Defendant then contends that, even if some of Plaintiff's claims do address the equivalent value issue, Plaintiff has still failed to allege facts supporting the second part of Plaintiff's constructive fraud claim. [*See* Dkt. 63 at 5-6.] In response, Plaintiff maintains that it has satisfied this prong by pleading that the debtors (*i.e.*, Finelight, YFD, Landco, or FL West) were insolvent or became insolvent as a result of the transfers at issue. [*See* Dkt. 67 at 7 (citing Ind. Code § 32-18-2-15).]

With respect to Finelight, Plaintiff maintains that the debtor's "actual insolvency [was] established as of January 18, 2008 when it failed to pay the indebtedness owed to Cmedia[.]" [Dkt. 67 at 7.] Plaintiff's complaint contains allegations consistent with this claim, [*see* Dkt. 1 ¶¶ 27-29], and Plaintiff additionally alleges that it has initiated proceedings supplemental in order to

determine whether Finelight has any assets available to pay its debts to Cmedia. [*Id.* ¶¶ 33, 35.] These allegations are sufficient to support an inference that Finelight was in fact insolvent at the time of the transfers to Julie.

With respect to YFD, Landco, and FL West, Plaintiff maintains that the alleged debtors' failure to pay certain loans indicates that the debtors were insolvent. [Dkt. 67 at 7.] In particular, Plaintiff alleges that, as of 2012, YFD, Landco, and FL West had outstanding balances of $102,852, $14,000, and $480,621 on certain loans. [*Id.* (citing Dkt. 1 ¶¶ 137, 148, 150).] As Defendants note, however, the allegations contains no facts suggesting that the loans were past due or that Plaintiff had failed to make any required payments on the loans. [*See* Dkt. 1 ¶¶ 137, 148, 150).] Indeed, Plaintiff's own allegations indicate that YFD and FL West had in fact paid several hundred thousand dollars towards the balance of the loans. [*See id.* ¶¶ 148, 150.] [5] Plaintiff's argument thus appears to be that any business with an outstanding loan is insolvent, but this argument is simply too implausible to accept.

Based on the foregoing, each of Plaintiff's constructive fraud claims against Julie and the Julie Trust are deficient: with respect to Finelight and FL West, Plaintiff has failed to allege that any transfer was made without receipt of reasonably equivalent value; and with respect to YFD, Landco, and FL West, Plaintiff has failed to allege facts from which the Court may plausibly infer that the debtors were insolvent. Each of Plaintiff's claims thus lacks at least one element required for it to prevail on its constructive fraud allegations, *see* Ind. Code § 32-18-2-14(2); *id.* § 32-18-2-15(2), and Plaintiff's claims should therefore be **DISMISSED**. This dismissal,

---

[5] With respect to Landco, Plaintiff alleges that, as of 2012, the entirety of the $14,000 loan remained outstanding. [Dkt. 1 ¶ 137.] As already noted, however, the allegation does not indicate when the loan was made or when any payments were due, such that the lack of any such payments does not indicate that Landco was insolvent.

however, should be **WITHOUT PREJUDICE** to Plaintiff's right to re-plead its claims in greater detail.

### 14. Count XXXI Against Kevin Todd

Plaintiff alleges that Kevin Todd is the Chief Financial Officer of Finelight, RMG, Bloom Media, and Bloom Insurance, [Dkt. 1 ¶ 42, 104, 123-26], and that Todd has "sold land on behalf of Landco to third-parties." [*Id.* ¶ 62.] Plaintiff then alleges that "Todd received payments from Finelight in the sum of at least $269,079.98 from June 11, 2010 to February 7, 2014 (the 'Finelight-Todd Payments')," [*id.* ¶ 168], and that Todd "received payments from RMG in the sum of at least $11,143.74 from July 16, 2012 to October 16, 2012 (the 'RMG-Todd Payments')." [*Id.* ¶ 169.] Plaintiff finally alleges that these payments were fraudulent, and Plaintiff asks the Court to set aside the payments. [*Id.* ¶¶ 380-83.]

These allegations do not satisfy the pleading standards of Rule 9(b). First, Plaintiff has identified only a broad timeframe during which the payments were allegedly made, and Plaintiff has thus failed to plead the particular time that any specific fraud was perpetrated. In addition, Plaintiff acknowledged in its response in opposition to Todd's motion to dismiss that Plaintiff has received the bank statements for both RMG and Finelight "for the period from May 1, 2010 forward." [Dkt. 68 at 4.] Plaintiff should therefore have the information necessary to plead the specific dates on which Finelight and RMG made payments to Todd, but Plaintiff has failed to do so.

Second, Plaintiff has not pled any facts establishing "what" fraud occurred or "how" that fraud was perpetrated: Plaintiff's complaint states only 1) that Kevin Todd was the CFO of Finelight and RMG; and 2) Finelight and RMG paid Kevin Todd certain amounts of money over approximately four years. The obvious inference—and, in the absence of any other allegations,

the only plausible inference—is that Finelight and RMG paid their CFO **a salary**. No facts in the complaint suggest the payments were anything but typical compensation that any company might pay to any employee, and Plaintiff has accordingly failed to satisfy Rule 9(b).

In response, Plaintiff argues that some facts **do** support an inference of fraud. Plaintiff notes that the payments at issue were allegedly paid directly to Todd—rather than passing through Finelight's or RMG's third-party payroll administrator—and Plaintiff notes that the payments were made at sporadic intervals, rather than on the regular, recurring basis on which a salary would typically be paid. [Dkt. 68 at 5.]

These facts, if true, could indeed support an inference of fraud, but whether the Court may consider these facts at this stage of the case is another matter. These facts appear nowhere in Plaintiff's complaint, and, as Plaintiff notes, [Dkt. 71 at 2], the Seventh Circuit has stated that "[i]t is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss, nor can it be amended by the briefs on appeal." *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989). More recently, however, the Seventh Circuit has stated that "'[a] plaintiff need not put all of the essential facts in the complaint[.]'" *Help At Home Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 752-53 (7th Cir. 2001) (quoting *Hrubec v. Nat'l R.R. Passenger Corp.*, 981 F.2d 962, 963–64 (7th Cir. 1992)). Instead, a plaintiff "may add [essential facts] by affidavit or brief in order to defeat a motion to dismiss if the facts are consistent with the allegations of the complaint." *Id.* Here, Plaintiff has added additional facts in its brief, and those facts are consistent with Plaintiff's complaint, insofar as they merely supplement—rather than contradict—the facts already alleged. The Court may accordingly consider these additional facts. *See Help At Home*, 260 F.3d at 752-53.

Plaintiff's allegations, however, still fall short of the requirements of Rule 9(b): Plaintiff **claims** that the payments to Todd were made at irregular times, but Plaintiff has still failed to indicate any **particular** time at which any **particular** payment was made. And Plaintiff **claims** that the payments bypassed the usual payroll administrator, but Plaintiff has still failed to allege how and where the payments **were** made. Finally, Plaintiff has conceded that it already has access to Finelight's and RMG's bank records for the time period relevant to Todd's payments. [*See* Dkt. 68 at 4.] As a result, this is **not** a case where the relevant facts are "peculiarly within the adversary's knowledge," *Richter*, 2007 WL 1164649, at *2, and Plaintiff must therefore do more to appraise Todd of "how," "when," and "where" the alleged fraud was perpetrated. Plaintiff's claims against Todd should therefore be **DISMISSED WITHOUT PREJUDICE** for failure to satisfy Rule 9(b).[6]

### C.  Piercing the Corporate Veil[7]

Counts I, VI, VIII, X, XII, XIV, XVI, XVIII, XX, XXII, XXIV, XXVI, and XXVIII of Plaintiff's complaint ask the Court to treat the various Rogers Entities as alter egos of one another and/or to pierce these entities' corporate veils. Plaintiff then asks the Court to enter a money judgment against each of the Rogers Entities in an amount equal to the state court judgment that Plaintiff has already obtained against Finelight and RMG.

---

[6] Certain of the payments to Todd were apparently paid sometime in 2010 or 2011, [*see* Dkt. 1 ¶ 168], such that these payments occurred more than four years before Plaintiff filed its complaint. Thus, in re-pleading the claims against Todd, Plaintiff should not allege any constructive fraud claim based on such payments. *See* Ind. Code § 32-18-2-19 (four-year statute of limitations for constructive fraud).

[7] Defendants did not raise any statute of limitations defense with respect to these claims, and there appears to be little Indiana case law setting out the applicable statute of limitations for an action premised on piercing the corporate veil. Other courts, however, have treated the applicable limitations period as the same as the period for enforcement of a judgment. *See, e.g.*, *Cent. States, Se. & Sw. Areas Pension Fund v. Profit-Sharing Plan of G & S Terminals, Inc.*, No. 92 C 0668, 1993 WL 735808, at *6 (N.D. Ill. Mar. 26, 1993) (analyzing cases in which courts determined that "the statute of limitations applicable to actions against entities which are deemed to be a 'single entity' with a judgment-debtor is the statute of limitations applicable to enforcement of judgments"). In Indiana, the period for enforcement of a judgment is twenty years. Ind. Code § 34–11–2–12. Thus, Plaintiff's veil-piercing claims appear to be timely.

A court in Indiana will disregard the corporate identity and pierce the corporate veil only if the party attacking the corporation can establish that the "corporate form was so ignored, controlled or manipulated that it was merely the instrumentality of another and that the misuse of the corporate form would constitute a fraud or promote injustice." *Aronson v. Price*, 644 N.E.2d 864, 867 (Ind. 1994). This is a "highly fact-sensitive inquiry." *Ziese & Sons Excavating, Inc. v. Boyer Const. Corp.*, 965 N.E.2d 713, 719 (Ind. Ct. App. 2012) (citation omitted). A court must thus consider several factors, including:

> (1) undercapitalization; (2) absence of corporate records; (3) fraudulent representation by corporation shareholders or directors; (4) use of the corporation to promote fraud, injustice, or illegal activities; (5) payment by the corporation of individual obligations; (6) commingling of assets and affairs; (7) failure to observe required corporate formalities; and (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form.

*Id.* at 720.

A plaintiff may also argue that two corporations are alter-egos. Such a claim is a "subset of piercing the corporate veil," and a plaintiff proceeding under this theory must show that "that two corporations are so closely connected that the plaintiff should be able to sue one for the actions of the other." *Id.* (citation omitted). A court assessing this theory of liability considers additional factors, including 1) whether similar corporate names were used; 2) whether the corporations shared common officers and employees; 3) whether the business purposes of the corporations were similar; and 4) whether the corporations were located in the same office space. *Id.* Under either theory, a court does not grant dispositive weight to any single factor; instead, a court must conduct "a careful review of the entire relationship between [the] various corporate entities[.]" *Id.* at 719-20.

Defendants in this case maintain that Plaintiff has not addressed enough of the above-described factors to give rise to a plausible veil-piercing or alter-ego claim. [Dkt. 59 at 15-17.]

Plaintiff takes the opposite view, [Dkt. 66 at 11-15], but the Court must first consider the pleading standard Plaintiff must satisfy.

Plaintiff's alter-ego and veil-piercing claims do not allege "fraud or mistake," Fed. R. Civ. P. 9(b), in and of themselves; as part of its claims, however, Plaintiff **does** allege that Defendants made fraudulent representations and used the corporate form to promote fraud. [*See* Dkt. 66 at 12-13.] Whether Rule 9(b) applies to such claims appears to be an open question. *See Deschepper v. Midwest Wine & Spirits, Inc.*, No. 13 CV 8379, 2015 WL 1433230, at *9 (N.D. Ill. Mar. 26, 2015) (quoting *Chapel Ridge Investments, L.L.C. v. Petland Leaseholding Co*., No. 1:13-CV-00146-PPS, 2013 WL 6331095, at *6 (N.D. Ind. Dec. 4, 2013)) ("The plaintiffs allege fraud as the basis for piercing the corporate veil. 'Unfortunately, the Seventh Circuit hasn't opined on the appropriate pleading standard for veil piercing when fraud allegations are in play.'"); *see also Chapel Ridge*, 2013 WL 6331095, at *6 (collecting cases) ("[O]ther courts are all over the board on the issue. Some courts have applied the Rule 9(b) particularity requirements to fraud-based veil piercing arguments. . . . Other courts have applied only the lower, notice requirements of Fed. R. Civ. P 8(a)."). The Court in this case need not resolve this debate: As explained below, Plaintiff's allegations are detailed enough to satisfy Rule 9(b), and so even if the heightened standards of that rule **do** apply, Defendants' motion to dismiss should be denied.

The first factor in the veil-piercing analysis is undercapitalization. *Ziese & Sons*, 965 N.E.2d at 719. This factor typically refers to "capitalization [that is] very small in relation to the nature of the business of the corporation and the risks attendant to such businesses," and this factor is typically assessed "as of the time of a corporation's formation." *Cmty. Care Centers, Inc. v. Hamilton*, 774 N.E.2d 559, 565 (Ind. Ct. App. 2002).

Here, Plaintiff alleges that various Corporate Defendants received loans that they were subsequently unable to repay. [*See, e.g.*, Dkt. 1 ¶¶ 130, 137, 142, 148, 150; *see also* Dkt. 66 at 12.] These unpaid balances reflect the corporations' current financial states—rather than the adequacy of their capitalization "at the time of . . . formation"—but Indiana courts have treated unpaid loans as evidence that can tend to establish undercapitalization. *See Cmty. Care Centers*, 774 N.E.2d at 565 (finding that a "factual dispute [existed] as to whether [the corporation] was undercapitalized" where the corporation had "not paid back the $550,000 loan . . . because it [lacked] the funds"). In this case, then, the Rogers Entities' various unpaid loans could support an inference that the entities were in fact undercapitalized. An alternative inference is simply that the loans were not yet due, but the Court at this stage of litigation must draw all reasonable inferences in favor of the plaintiff, *Yeftich*, 722 F.3d at 915, and Plaintiff's complaint therefore allows the Court to infer that at least some of the Rogers Entities were undercapitalized.

The next veil-piercing factor is the "absence of corporate records." *Ziese & Sons*, 965 N.E.2d at 719. Defendants argue that Plaintiff failed to allege any facts related to this factor, [Dkt. 59 at 15], but Plaintiff did allege that Rogers testified "that, upon review of documents produced by Finelight describing various transfers between Finelight and the other Rogers Entities, Rogers was unable to determine whether the transfers were made from the other Rogers Entities to Finelight or from Finelight to other Rogers Entities." [Dkt. 1 ¶ 172.] Taking Plaintiff's allegations as true—as the Court must at this stage of the litigation—it appears that the very person alleged to have exclusive control of the Rogers Entities was nonetheless unable to decipher what information his entities' records contained. Thus, even if the entities in this case did retain certain records, those records

were apparently inadequate, and this factor thus supports a finding that piercing the corporate veil would be appropriate.

The next veil-piercing factor considers "fraudulent representations" by shareholders or directors. *Ziese & Sons*, 965 N.E.2d at 719. Here, Plaintiff alleges that Rogers himself made fraudulent representations when he committed "deception" and "fraud" in connection with the Humana Payments and the Finelight-RMG Transfer. [Dkt. 1 ¶¶ 26-30, 183-86, 190-93.] As described above, the deception and fraud claims under the CVRA are time-barred, but this does not change the fact that the deception and fraud allegedly occurred. Thus, even if Plaintiff cannot proceed on its CVRA claims, the Court may still infer from Plaintiff's allegations that Rogers did in fact make false or misleading statements in an attempt to defraud Cmedia. This factor thus supports Plaintiff's veil-piercing and alter-ego claims.

The next relevant factor is "use of the corporate form to promote fraud, injustice, or illegal activities." *Ziese & Sons*, 965 N.E.2d at 719. Defendants maintain that Plaintiff's complaint "does not make a single factual allegation . . . that Rogers or any other owners or directors of any of the Corporate Defendants have . . . used the corporate identity to promote fraud," but this argument obviously overlooks numerous allegations in the complaint: As explained above, Counts V, VII, IX, XI, XIII, XV, XVII, XIX, XXI, XXIII, XXV, and XXVII of Plaintiff's complaint each allege that Finelight made various fraudulent transfers to the Corporate Defendants in order to prevent Plaintiff from recovering the judgment that Plaintiff had obtained. In addition, Plaintiff alleges that Rogers maintained exclusive control of Finelight and each of the entities alleged to have received the transfers. Hence, Plaintiff's complaint plainly **does** allege that Rogers and

43

his related entities have used those entities' separate corporate existence as a means to deprive Plaintiff of its lawful right to execute its state court judgment against Finelight.

Admittedly, some of Plaintiff's allegations regarding the fraudulent transfers are—as already explained—barred by the applicable statute of limitations. As noted above, however, no such statute of limitations applies to Plaintiff corporate veil-piercing claims. *See supra* note 7. In addition, many of Plaintiff's potentially time-barred claims include details that provide fair notice of which transfers are at issue: For example, Plaintiff's descriptions of the Manors-Landco Transaction, the Landco-Crossroads Transfer, and the YFD real estate purchases identify the exact dates of purchase, the exact plots of real estate involved in the sales, and the exact price of each plot sold. [Dkt. 1 ¶¶ 134, 141, 143-47.] The specificity of such claims thus undercuts Defendants' argument that the complaint does not contain "a single factual allegation" related to Defendants' fraudulent use of the corporate form.

Plaintiff's allegations with respect to Finelight Agency are also instructive. According to Plaintiff, Rogers himself testified that "Finelight Agency has no employees and was created to enter into contracts with third parties that would have otherwise been unwilling to do business with Finelight due to Finelight's 'derogatory credit.'" [Dkt. 1 ¶ 156.] Rogers then allegedly "admitted that Finelight Agency was a 'shell to do work with third parties.'" [*Id.* ¶ 157.] Based on these allegations, Finelight Agency was apparently created to deceive third parties about the nature of the entity with which those parties were dealing, and Plaintiff's complaint thus plainly indicates that Rogers did in fact use the corporate form of Finelight Agency in a way that promoted fraud.

The next veil-piercing factors are "payment by the corporation of individual obligations" and "commingling of assets and affairs." *Ziese & Sons*, 965 N.E.2d at 719. The complaint in this case is replete with such allegations: First, Finelight "granted a promissory note in favor of Rogers in the amount of $1,500,000.00," [Dkt. 1 ¶ 128], and Rogers purchased his personal residence through a transaction executed by YFD. [*Id.* ¶ 143.] Second, Rogers divested YFD, FL West, and Landco of certain property as consideration for his wife's release of claims in the couple's divorce decree. [*Id.* ¶¶ 162-64; *see also* Dkt. 63 at 4-5 (Julie's Br. in Support of Mot. to Dismiss).] Finally, Rogers "testified that the business records of the Rogers Entities are all kept in a barn at his personal residence." [*Id.* ¶ 119.] Together, these allegations are enough to infer that Rogers' individual and corporate assets and affairs were commingled, and these allegations thus support an inference that Plaintiff has a plausible veil-piercing claim.

The last specific factor set out in *Ziese & Sons* is "failure to observe required corporate formalities." 965 N.E.2d at 719. Plaintiff implicitly concedes that this factor does not support its claims, [*see* Dkt. 66 at 13-14], but, as described above, no single factor in the veil-piercing analysis is dispositive, and the Court must review the "entire relationship between" the various corporate entities. *Id.* at 719-20. Here, at least six of the veil-piercing factors described above support an inference that Rogers manipulated his entities' corporate existence in a way that promoted fraud, and Plaintiff's allegations are thus sufficient to withstand Defendants' motion to dismiss.

A similar analysis holds true with respect to Plaintiff's alter-ego claims. As explained above, additional factors to consider in analyzing these claims include whether similar corporate names were used; whether the corporations shared common officers,

directors, and employees; whether the business purposes of the corporations were similar; and whether the corporations were located in the same offices. *Ziese & Sons*, 965 N.E.2d at 720.

Here, Plaintiff directs its allegations, *inter alia*, against "Finelight" Public Relations, "Finelight" Agency, and "FL" West; against "Heartland" Development Group and "Heartland" Realty; and against "Bloom" Insurance and "Bloom" Media. [*See* Dkt. 1.] Admittedly, some entities—such as YFD and Aquila—have somewhat dissimilar names, but the commonalities amongst the names of the Finelight, Heartland, and Bloom entities are too obvious to ignore.

Next, Plaintiff alleges that Rogers himself maintains exclusive control over each of the entities at issue, [*see, e.g.*, *id.* ¶¶ 49, 57, 61, 70, 74, 79, 84, 97, 103, 117], and that many of the entities maintain office space at 1801 S. Liberty Drive in Bloomington, Indiana. [*See id.* ¶ 38 (Finelight), ¶ 48 (Aquila), ¶ 60 (Landco), ¶ 65 (Walnut Street), ¶ 69 (Heartland Realty), ¶ 73 (Heartland Development), ¶ 78 (Crossroads), ¶ 87 (YFD), ¶ 91 (FL West), ¶ 102 (Bloom Insurance), ¶ 111 (Finelight Agency), ¶ 116 (Bloom Media).] Plaintiff also specifically alleges that both RMG and Bloom Insurance shared a call center (located, incidentally, at 1801 S. Liberty Drive), and that these entities also shared certain employees. [*Id.* ¶¶ 108.] As such, the second and fourth factors in the alter-ego analysis support an inference that Plaintiff's alter-ego claims are plausible.

The final factor—similar business purposes—also supports Plaintiff's claim. As Plaintiff notes, many of the entities (*e.g.*, Landco, Walnut Street, Heartland Realty, and Heartland Development) were involved in real estate transactions in Monroe County, [*see* Dkt. 66 at 15], and many of the remaining entities (*e.g.*, Finelight, Finelight PR, and

Finelight Agency) were mainly involved in the provision of advertising services. [*Id.*] Defendant notes that Aquila, by contrast, was allegedly formed to purchase airplanes for later resale, [Dkt. 59 at 16-17 (citing Dkt. 1 ¶ 50)], but this appears to be an exception to the general rule that the various Rogers Entities were formed to provide either real estate or advertising services. As such, the final factor supports Plaintiff's alter-ego theories.

Overall, then, Plaintiff's complaint paints a picture of several corporate entities that were operated by the same person; that intermingled their assets and maintained inadequate records; that shared office space and business purposes; and that were operated in a way that facilitated allegedly fraudulent transfers. This is sufficient for the Court to plausibly infer that Plaintiff may prevail on its veil-piercing and alter-ego claims, and Defendants' motion to dismiss these claims should be denied.

This remains true regardless of whether the Court applies the heightened pleading standard of Rule 9(b) to Plaintiff's claims. As already noted, the main purpose of that rule is simply to give a defendant "fair notice" of the plaintiff's allegations. *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). As such, a court should **not** apply the rule in an "overly rigid" manner. *Cunningham Charter Corp. v. Learjet, Inc.*, No. 07-CV-00233 DRH, 2011 WL 2633887, at *5 (S.D. Ill. July 5, 2011); *accord, e.g.*, *U.S. S.E.C. v. Stifel, Nicolaus & Co.*, No. 11-C-0755, 2012 WL 4069346, at *1 (E.D. Wis. Sept. 14, 2012) ("[C]ourts and litigants should not take an overly rigid view of the dictates of Rule 9(b)."). Instead, the court should take a "somewhat flexible" approach that accounts for the difficulties that a plaintiff may face in pleading the details of its claim. *Cincinnati Life Ins. Co. v. Grottenhuis*, No. 2:10-CV-00205, 2011 WL 1107114, at *8 (S.D. Ind. Mar. 23, 2011), *aff'd sub nom. Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d

47

939 (7th Cir. 2013); *see also Cunningham*, 2011 WL 2633887, at *5 (citation and quotation marks omitted) ("[C]ourts remain sensitive to information asymmetries that may prevent a plaintiff from offering more detail.").

Here, Plaintiff has provided enough detail that Defendants have fair notice of Plaintiff's veil-piercing and alter-ego claims. Plaintiff has identified the specific entities at issues; the specific person who controlled those entities; and certain specific acts that allegedly allowed those entities to perpetuate a fraud against Plaintiff. In addition, Plaintiff has not yet had the opportunity to conduct discovery with respect to the majority of the entities identified in its complaint. Any additional detail that might support Plaintiff's complaint is therefore within the exclusive knowledge of these entities, and the Court may accordingly excuse any omission of such details from the complaint. Plaintiff has therefore satisfied Rule 9(b), and Defendants' motion to dismiss Counts I, VI, VIII, X, XII, XIV, XVI, XVIII, XX, XXII, XXIV, XXVI, and XXVIII of Plaintiff's complaint should be **DENIED**.

### D.  Motions to Stay

The Corporate Defendants and Kevin Todd ask the Court to stay this case during the pendency of Plaintiff's state court proceedings supplemental. [Dkt. 59 at 18; Dkt. 61 at 6.] Defendants argue that allowing both cases to proceed would amount to repetitive litigation of Plaintiff's claims, and they note that such multiplication of claims can "impose[] needless costs on one's adversary, on the judicial system, and on other litigants, who must endure a longer queue." [Dkt. 59 at 18 (quoting *Rogers v. Desiderio*, 58 F.3d 299, 300 (7th Cir. 1995)).]

As Defendants themselves note, however, Plaintiff already attempted to amend its state court complaint to allege its new causes of action against Sherman Rogers and the Rogers

Entities. [Dkt. 59 at 2; *see also* Dkt. 59-3 (state court motion to amend).] The state court "summarily denied" that motion, [Dkt. 59 at 2], and Plaintiff has accordingly been unable to pursue its fraudulent transfer and veil-piercing claims in state court. [*See* Dkt. 66 at 15 ("The [state] case contains no CVRA Claims, no veil piercing claims, and no claims against any of the Corporate Defendants.").] As such, the claims in this case are distinct from Plaintiff's state-court claims, and allowing these proceedings to continue poses little if any risk of duplicating the state court proceedings. The motion to stay the current proceedings should therefore be **DENIED**.

Next, Julie and the Julie Trust ask the Court to stay these proceedings with respect to Julie's alleged receipt of assets from Landco, YFD, and FL West. [Dkt. 63 at 6.] As support, Defendants note that Plaintiff may recover against Julie and the Julie Trust only if the transfers to these parties were fraudulent as to one of Plaintiff's "debtors." [*Id.* (citing Ind. Code § 32-18-2-14; *id.* § 32-18-2-15).] A "debtor," in turn, "means a person who is liable on a claim," Ind. Code § 32-18-2-6, and Defendants thus maintain that Plaintiff cannot state a cause of action to recover Julie's property until the Court has determined whether Landco, YFD, and FL West are in fact "liable on a claim" to Plaintiff. [*See* Dkt. 63 at 6.]

As explained above, however, Plaintiff's constructive fraud claims against Landco, YFD, and FL West require Plaintiff to show, *inter alia*, that the transfers from these entities to Julie were executed without receiving "reasonably equivalent value" in return from Julie. Ind. Code § 32-18-2-14; *id.* § 32-18-2-15. As such, Plaintiff may need to conduct discovery with respect to Julie to determine whether Julie provided any consideration for the transfers.

Likewise, Plaintiff can advance its veil-piercing and alter ego claims against Landco, YFD, and FL West by showing, *inter alia*, that these entities comingled assets with or paid the personal obligations of Sherman and Julie Rogers. *See Ziese & Sons*, 965 N.E.2d at 719. As

such, Plaintiff may need to conduct discovery with respect to Julie to help establish that piercing the corporate veil is warranted.

Based on these considerations, discovery into Julie's affairs and assets may be necessary for Plaintiff to establish that Landco, YFD, and FL West are in fact liable to Plaintiff. It is therefore inappropriate to limit that discovery until after that determination is made, and Defendants' motion to stay should be **DENIED**.

### IV.    Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the Court **GRANT IN PART** and **DENY IN PART** Defendants' Motions to Dismiss. [Dkts. 58, 60 & 62.] Plaintiff's CVRA claims are time-barred, and Counts II, III, and IV should therefore be **DISMISSED WITH PREJUDICE**. Plaintiff's veil-piercing and alter-ego claims are timely and sufficiently pled, and Defendants' motion to dismiss Counts I, VI, VIII, X, XII, XIV, XVI, XVIII, XX, XXII, XXIV, XXVI, and XXVIII should therefore be **DENIED**. Finally, some of Plaintiff's fraudulent transfer claims are timely and sufficiently pled; some of Plaintiff's fraudulent transfer claims are timely but insufficiently pled; and some of Plaintiff's fraudulent transfer claims are time-barred. Defendants' motion to dismiss these claims should thus be **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Count V Against Aquila

   a.  The constructive fraud claim based on the Finelight-Aquila Loan should be dismissed with prejudice.

   b.  The actual fraud claim based on the Finelight-Aquila Loan should proceed.

   c.  The constructive fraud claim based on the Finelight-Aquila Investment should be dismissed with prejudice.

        d.   The actual fraud claim based on the Finelight-Aquila Investment should proceed.

        e.   The constructive fraud claim based on the Finelight-Aquila Payments should be dismissed without prejudice.

        f.   The actual fraud claim based on the Finelight-Aquila Payments should proceed.

2.  Count VII Against Finelight PR

        a.   Both the constructive fraud and actual fraud claims should proceed.

3.  Count IX Against Landco

        a.   The constructive fraud claim based on the Manors-Landco Transfer should be dismissed with prejudice.

        b.   The actual fraud claim based on the Manors-Landco Transfer should proceed.

        c.   The constructive fraud claim based on the Finelight-Landco Loan should be dismissed without prejudice.

        d.   The actual fraud claim based on the Finelight-Landco Loan should proceed.

4.  Count XI Against Walnut Street

        a.   The constructive fraud claim against Walnut Street should be dismissed with prejudice.

        b.   The actual fraud claim against Walnut Street should proceed.

5.  Count XIII Against Heartland Realty

        a.   Both the constructive fraud and actual fraud claims should proceed.

6.  Count XV Against Heartland Development

        a.   Both the constructive fraud and actual fraud claims should proceed.

7.  Count XVII Against Crossroads

   a. The constructive fraud claim based on the Landco-Crossroads Transfer should be
      dismissed with prejudice.

   b. The actual fraud claim based on the Landco-Crossroads Transfer should be
      proceed.

   c. The constructive fraud claim based on the Finelight-Crossroads Transfer should
      be dismissed without prejudice.

   d. The actual fraud claim based on the Finelight-Crossroads Transfer should
      proceed.

8. Count XIX Against YFD

   a. The constructive fraud claim against YFD should be dismissed with prejudice.

   b. The actual fraud claim against YFD should proceed.

9. Count XXI Against FL West

   a. The constructive fraud claim based on the Finelight-FL West Loan should be
      dismissed with prejudice.

   b. The actual fraud claim based on the Finelight-FL West Loan should proceed.

   c. The constructive fraud claims based on the Finelight FL-West Payments and the
      RMG-FL West Payments should be dismissed without prejudice.

   d. The actual fraud claims based on the Finelight FL-West Payments and the RMG-
      FL West Payments should proceed.

10. Count XXIII Against Bloom Insurance

   a. The constructive fraud claim against Bloom Insurance should be dismissed
      without prejudice.

   b. The actual fraud claim against Bloom Insurance should proceed.

11. Count XXV Against Finelight Agency

    a.  The constructive fraud claims against Finelight Agency should be dismissed without prejudice.

    b.  The actual fraud claims against Finelight Agency should proceed.

12. Count XXVII Against Bloom Media

    a.  The constructive fraud claim against Bloom Media should be dismissed without prejudice.

    b.  The actual fraud claim against Bloom Media should proceed.

13. Counts XXIX and XXX Against Julie and the Julie Trust

    a.  The constructive fraud claims against Julie and the Julie Trust should be dismissed without prejudice.

    b.  The actual fraud claims against Julie and the Julie Trust should proceed.

14. Count XXXI Against Todd

    a.  Both the constructive fraud and actual fraud claims against Todd should be dismissed without prejudice.

Plaintiff is granted leave to file an amended complaint in compliance with the foregoing within **fourteen (14) days** of the date the Court adopts this report and recommendation. Any objections to the report and recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen (14) days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date:  07/31/2015

_____

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Darryn Louis Duchon
dduchon@buckduchon.com

Joseph L. Mulvey
RUBIN & LEVIN, PC
jmulvey@rubin-levin.net

R. Brock Jordan
RUBIN & LEVIN, PC
brock@rubin-levin.net

Andrew Todd Kight
TAFT STETTINIUS & HOLLISTER LLP
akight@taftlaw.com

Richard A. Kempf
TAFT STETTINIUS & HOLLISTER LLP
rkempf@taftlaw.com

Tammara Danielle Porter
TAFT STETTINIUS & HOLLISTER LLP
tporter@taftlaw.com